UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALDEN MACHT & HARAN LLP, <br><br> Plaintiff, <br><br> v. <br><br> JULIO MARTIN HERRERA VELUTINI, <br><br> Defendant. | **COMPLAINT** <br><br> Civil Action No.: |

Plaintiff Walden Macht & Haran LLP ("WMH" or "Plaintiff"), for its Complaint against Defendant Julio Martin Herrera Velutini ("Herrera" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. WMH is a law firm. Herrera promised to pay WMH to represent Herrera's consultant and the consultant's company (together, "Client"), in a U.S. Department of Justice ("DOJ") investigation. Herrera likewise had his own criminal defense counsel in connection with this investigation.

2. To induce WMH to agree to represent the Client, and before WMH began any substantive work, one of Herrera's criminal defense attorneys ("Attorney-1"), speaking on Herrera's behalf, represented and promised to WMH that Herrera would fully fund WMH's representation of Client. The Client represented the same to WMH.

3. Thereafter, during in-person meetings between Herrera and WMH, Herrera personally and expressly confirmed the promises and representations previously made by Attorney-1 and Client. Specifically, Herrera represented and promised to WMH that he would personally fully fund WMH's representation of Client.

1

4.      In reliance upon Herrera's promises, WMH provided Client with substantial legal services. Herrera benefited from those services as well because, pursuant to a joint defense agreement (the "JDA"), Herrera received from WMH both: (a) valuable information about DOJ's investigation; and (b) valuable work-product that Herrera would not have received otherwise. WMH provided all of this JDA material to Herrera and Attorney-1 with the knowledge and consent of Client.

5.      At first, Herrera in fact complied with his promised obligation to pay WMH for its representation of Client. However, since in or about April 2022, Herrera has failed to pay WMH as he has promised.

6.      WMH duly presented Herrera, through his counsel, Attorney-1, eight invoices for legal fees and expenses performed by WMH on Client's behalf between in or about February 2022 through in or about September 2022.

7.      Herrera has wrongfully failed to pay WMH's unpaid invoices totaling $419,792.95.

## VENUE AND JURISDICTION

8.      Federal diversity jurisdiction exists under 28 U.S.C. § 1332 because: (a) Herrera is citizen of Italy and Venezuela; (b) WMH is a limited liability partnership, whose partners are citizens of New York, Pennsylvania, and New Jersey; and (c) the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.      Venue is proper in this District pursuant 29 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to WMH's claims occurred in this District.

## PARTIES

10.     WMH is a New York City-based law firm whose lawyers practice white-collar criminal defense. WMH's white-collar practice is led by several former federal prosecutors who have extensive experience representing high-profile clients before the DOJ. Client's lead counsel

from WMH were: (1) a former Deputy Chief of the Business and Securities Fraud Unit of the U.S. Attorney's Office for the Eastern District of New York; and (2) a former Deputy Chief of the DOJ's Fraud Section.

11. Herrera, upon information and belief, is a dual Venezuelan-Italian citizen who is domiciled in London, United Kingdom. On or about August 3, 2022, Herrera was indicted in the District of Puerto Rico.

## **RELEVANT FACTS**

12. In 2021, Attorney-1 was representing Herrera in connection with a DOJ criminal investigation.

13. In or about December 2021, Attorney-1 referred Client to WMH, in connection with the same investigation.

14. Before WMH began any substantive work for Client, Attorney-1, on Herrera's behalf, and Client each represented to WMH that Herrera had promised to fund, and would be responsible for financing the entirety of, Client's defense. Each described Herrera as a billionaire.

15. In reliance on those promises, WMH agreed to represent Client. WMH would not have agreed to represent Client without Herrera's promised payment, because Client lacked the means to pay WMH's bills.

16. Herrera personally confirmed the promises and representations previously made by Attorney-1 and Client, as further set forth in paragraph 20, below.

17. WMH's services included gathering and analyzing evidence; communicating with DOJ on Client's behalf; meeting with, communicating with, and advising Client in connection with the investigation and subsequent prosecution, and having JDA communications and meetings with Herrera and Attorney-1.

18. Herrera benefited from WMH's representation of Client in at least four ways.  *First*, WMH was in direct contact with DOJ about the status of the investigation, whereas Herrera's counsel was not; thus, through the parties' JDA communications, Herrera received valuable information about the DOJ investigation that he would not have received otherwise.  *Second*, WMH generated valuable work-product, which Herrera received under the parties' JDA; Herrera would not have received it otherwise, and would have had to pay his own attorneys for such work.  *Third*, when the indictment of Herrera and Client was made public, WMH handled the arraignment and bail proceedings on Client's behalf, and shared information with Herrera's counsel in a manner that assisted Herrera in negotiating his own bail package.  *Fourth*, before Herrera had appeared in the criminal case (and while he and his counsel were negotiating the terms of his surrender with the government), WMH handled court proceedings on behalf of Client while coordinating strategy with Herrera's counsel regarding issues that were important to Herrera.  In undertaking each of the foregoing actions, WMH acted at all times with Client's knowledge, for Client's benefit, and under Client's express direction.

19. Initially, at the request of Attorney-1 (who at all times had actual and apparent authority to speak on behalf of Herrera), WMH invoiced Client, who made two payments to WMH from his business account.  Upon information and belief, pursuant to an agreement between Herrera and Client, Herrera reimbursed Client for all or a significant portion of those payments.  To the extent that Herrera did not reimburse Client for all of Client's legal fees, Herrera violated the promises and representations that he had made to Client.

20. In February 2022, Herrera requested a JDA meeting in London to discuss the status of the DOJ investigation, legal strategy, and WMH's current and projected fees.  Prior to traveling to London to meet with Herrera, Attorney-1, and Client, WMH coordinated with Attorney-1

4

regarding the hotel accommodations and class of airline tickets that Herrera would reimburse. During the meetings in London, held at Client's office and at his townhouse, Herrera expressly and personally confirmed to WMH that he would continue to fully fund Client's legal defense. Herrera held himself out as a sophisticated consumer of legal services and indicated that he was both familiar with and comfortable with the legal fees incurred to date, and he agreed with the strategy that WMH and Attorney-1 would be employing in the future.  At or about that time, Attorney-1 instructed WMH to send its invoices for Client's legal representation to Attorney-1 for direct payment by Herrera, pursuant to arrangements that he had worked out with Herrera, and WMH began doing so.  In reliance on those promises of payment and instructions regarding invoicing, WMH continued its representation of Client.  It would not have done so otherwise, because of Client's own inability to pay WMH's bills.

21.     On or about March 23, 2022, WMH sent an invoice to Attorney-1, in the amount of approximately $178,000, for legal services rendered to Client through February, 2022.

22.     On or about April 15, 2022, Attorney-1, acting for his client Herrera, made a partial payment of $80,000 on account to WMH, toward payment for legal services rendered by WMH to Client.

23.     In August 2022, Herrera and Client were indicted in the District of Puerto Rico and released on bail to this District.  WMH handled Client's surrender and arraignment, filed motions on Client's behalf, began to review the voluminous discovery in the matter, and continued to work with Attorney-1 pursuant to the JDA.  At or about that time, Attorney-1 confirmed that Herrera continued to promise that he would fully WMH's defense of Client.

24.     On September 15, 2022, with the consent of Attorney-1, a WMH partner had lunch with Herrera and Client in New York.  During the lunch, the WMH partner and Herrera discussed

the amounts of the fees that had been incurred to date and Herrera repeatedly reiterated that he would fully pay all such outstanding legal fees and the amounts incurred to date, which at the time totaled roughly $400,000, consisting of approximately $350,570 for services rendered through August 31, 2022, plus roughly $50,000 for services rendered between September 1 and September 14, 2022.

25.     Herrera also stated that he wanted to reach an agreement with WMH on a fixed-fee for Client's defense, *going forward* from that time, that would mirror Herrera's own engagement agreement with Attorney-1. WMH prepared and sent Herrera a rider to WMH's engagement letter with Client containing such terms. Herrera did not respond to this communication.

26.     Between March 23, 2022 and October 20, 2022, inclusive, WMH sent Attorney-1, as agent for Herrera, eight invoices for services rendered, totaling $514,792.95. These invoices were received and retained through October 2022 without protest, reflecting a balance due (as of October 20, 2022) of $434,792.95.

27.     In November 2022, another of Herrera's lawyers told WMH that, contrary to Herrera's prior representations and promises, Herrera now would only agree to pay a fraction of WMH's fees and expenses for its representation of Client.

28.     In November 2022, with Client's consent, WMH withdrew as Client's counsel in the District of Puerto Rico criminal action, and terminated its engagement on behalf of Client.

29.     After termination of Client's representation, WMH applied a $15,000 advance fee to the outstanding balance, resulting in a final overdue balance, without interest, of $419,792.95.

30.     The principal amount of $419,792.95 remains due and outstanding.

31.     Upon information and belief, Herrera has paid, continues to pay, and continues to promise to pay, other counsel who have agreed to represent Client, including Client's local counsel

in the indicted case as well as counsel admitted pro hac vice in that proceeding. Upon information and belief, such counsel have agreed to represent Client on the basis of Herrera's payment of legal fees and promises to pay legal fees for such representation.

32. Upon information and belief, and unbeknownst to WMH at the time it agreed to represent Client, Herrera has a history of breaking his promises to pay lawyers and other professionals.

## FIRST CAUSE OF ACTION
### Breach of Contract

33. Plaintiff repeats and realleges the allegations in paragraphs 1-32 as if fully set forth herein.

34. Plaintiff had a valid and binding contract with Defendant to pay all legal fees and expenses for Plaintiff's representation of Client.

35. Plaintiff has performed all of its obligations under that contract.

36. Defendant separately and personally benefited from those legal services.

37. In breach of his obligations, Defendant failed to fully pay outstanding invoices.

38. Defendant's breach has directly and proximately caused Plaintiff damages.

## SECOND CAUSE OF ACTION
### Promissory Estoppel

39. Plaintiff repeats and realleges the allegations in paragraphs 1-32 as if fully set forth herein.

40. Defendant made a clear and unambiguous promise that he would fully pay Plaintiff for the legal fees and expenses incurred in connection with Plaintiff's representation of Client.

41. Plaintiff relied on Defendant's promises in rendering legal services to Client.

42. Defendant has not paid Plaintiff's fees and expenses.

43. Defendant's failure to keep his promise has injured Plaintiff.

44. Failure to enforce that promise will cause Plaintiff an unconscionable injury.

### THIRD CAUSE OF ACTION
### Unjust Enrichment

45. Plaintiff repeats and realleges the allegations in paragraphs 1-32 as if fully set forth herein.

46. Plaintiff rendered legal services to Client.

47. Defendant benefited from these legal services.

48. Defendant induced Plaintiff to render those services to Client by promising to pay Plaintiff's fees in full, yet has not made such payment.

49. It is against equity and good conscience to allow Defendant to keep the benefit he received from Plaintiff's legal services at Plaintiff's expense.

### FOURTH CAUSE OF ACTION
### Account Stated

50. Plaintiff repeats and realleges the allegations in paragraphs 1-32 as if fully set forth herein.

51. Plaintiff issued and regularly presented to Defendant invoices for Plaintiff's legal services rendered to Client.

52. Defendant expressly promised, on multiple occasions, to pay in full Plaintiff's invoices for such services, and Plaintiff would not have rendered such services absent those promises.

53. Defendant received and retained Plaintiff's invoices, for months and months, without protest.

54. Defendant also made partial payments on those invoices.

55. An account stated has arisen between Plaintiff and Defendant in the amount of $419,792.95.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment and relief as follows:

a. Awarding damages to Plaintiff, in an amount to be determined at trial, to make Plaintiff whole for any and all losses incurred as a result of the Defendant's actions, but in no event less than $419,792.95;

b. Awarding Plaintiff costs and expenses incurred in the prosecution of this action;

c. Awarding Plaintiff statutory prejudgment interest; and

d. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's actions.

Dated:  New York, New York
January 11, 2024

**WALDEN MACHT & HARAN LLP**

_____
By: Jeffrey A. Udell
250 Vesey Street, 27th Floor
New York, New York 10281
Tel: (212) 335-2030
judell@wmhlaw.com